IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL CASE NO. 3:23-cv-00418-MR-DCK

JAMES WILLIAMS,                    )
                                   )
            Plaintiff,             )
                                   )
vs.                                )        <u>ORDER</u>
                                   )
                                   )
JASON KEMP, et al.,                )
                                   )
            Defendants.            )
_____    )

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint [Doc. 1], pursuant to 28 U.S.C. §§ 1915A and 1915(e); Plaintiff's Motion for Appointment of Counsel [Doc. 3]; and Plaintiff's Motion Requesting Leave to Amend Complaint [Doc. 9]. Plaintiff is proceeding in forma pauperis. [Docs. 2, 7].

I.      **PROCEDURAL HISTORY**

On November 28, 2007, Plaintiff James Williams ("Plaintiff") pleaded guilty in the District Court for the District of South Carolina to one count of armed bank robbery and aiding and abetting the same under 18 U.S.C. §§ 2113(a), 2113(d), and 2 and one count of using and possessing a firearm in furtherance of count one, a crime of violence, and aiding and abetting the

same, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2. [Criminal Case No. 6:07-1207 (D.S.C.), Docs. 28, 48]. He was sentenced to a total term of imprisonment of 125 months and a term of supervised release of five (5) years. [Id., Doc. 82]. On October 25, 2017, Plaintiff's supervised release was revoked for violations of the conditions of his release and Plaintiff was sentenced to a term of imprisonment of one month and a term of supervised release of four (4) years and 11 months. [Id., Doc. 171]. On January 9, 2019, jurisdiction over Plaintiff's supervised release was transferred to this District. [Criminal Case No. 3:19-cr-00068-MOC-SCR-1 ("CR"), Doc. 1]. On April 5, 2019, District Judge Max Cogburn modified the terms of Plaintiff's conditions of supervised release, in pertinent part, as follows:

> The defendant shall submit his/her person, property, house, [and] residence … to a search conducted by a United States Probation Officer and such other law enforcement personnel as the probation officer may deem advisable, without a warrant. The defendant shall warn any other occupants that such premises may be subject to searches pursuant to this condition.

[CR Doc. 2 at 1]. This modification conformed Plaintiff's conditions of supervised release to those standard in this District. [See id. at 2]. Plaintiff's supervised release has twice since been revoked for various violations of his supervised release conditions. [CR Docs. 17, 28; see CR Docs. 7, 20]. The first such Judgment, in part, recites verbatim the April 5, 2019 modification.

[See CR Doc. 17 at 3].  The second such Judgment, which was entered on

October 29, 2021, provides that:

> The defendant shall submit to a search if the Probation Officer has a reasonable suspicion that the defendant has committed a crime or a violation of a condition of supervised release.  Such a search may be conducted by a U.S. Probation Officer, and such other law enforcement personnel as the probation officer may deem advisable, without a warrant or the consent of the defendant.  Such a search may be of any place where evidence of the above may reasonably be expected to be found, including defendant's person, property, house, residence, vehicle, communications or data storage devices or media or office.

[CR Doc. 28 at 3].  As such, pursuant to this modification, a Probation Officer

may conduct a warrantless search only if he has "a reasonable suspicion

that the defendant has committed a crime or a violation of a condition of

supervised release" and only of "any place where evidence of the above may

reasonably be expected to be found."  [Id.].

On March 17, 2022, the Court again modified the terms of Plaintiff's

supervised release, ordering home detention and location monitoring,

because Plaintiff was "in noncompliant status due to ongoing drug use and

failure to establish stable and verifiable employment."  [CR Doc. 30 at 2].

Plaintiff had tested positive for marijuana and cocaine and failed to secure

stable employment.  [Id.].  In seeking the modification, United States

Probation Officer (USPO) Stoltenberg stated, "We will continue to monitor the defendant closely and report additional noncompliance to the Court as required." [Id.]. Plaintiff agreed to the modification. [Id.].

On March 31, 2022, USPO Stoltenberg petitioned the Court to revoke Plaintiff's supervised release and issue a warrant for his arrest based on the previous positive drug tests and a Grade A new law violation discovered that day. [CR Doc. 31 at 2]. In the Petition, Stoltenberg reported that:

> During a warrantless search operation of the defendant's reported residence on 03/31/2022, the defendant possessed with the intent to distribute approximately 14 grams of cocaine hydrochloride and approximately seven (7) grams of "crack" cocaine. These items were found in the defendant's bedroom, along with digital scales and other drug paraphernalia. The defendant provided an audio recorded post-*Miranda* statement indicating that all items of contraband found in his bedroom belonged to him. The defendant later admitted to [Supervising USPO (SUSPO)] J. Kemp that he has sold small amounts of "crack" cocaine and powder cocaine during his term of supervised release to help earn money to start a business.

[Id.]. The revocation and detention hearings were held on June 6, 2022. [See CR Doc. 39 at 2: Revocation Hearing Tr.]. Plaintiff requested a preliminary hearing on his supervised release violation. [See id. at 2]. SUSPO Jason Kemp testified. [See id. at 3]. Kemp testified that he was Plaintiff's supervising probation officer and that he "also participated in a

4

warrantless search operation, which was in response to some noncompliance." [Id.]. Kemp testified that Plaintiff's marijuana and cocaine use was "part of [their] reason for conducting a warrantless search." [Id. at 4-5, 10]. Kemp also testified that, "in addition to the elicit drug use on the positive urine screens, the police report had come out where the defendant was a victim in a household that had been shot. A round of ammunition had come through a window when he was in the residence. He wasn't cooperative with police, and he failed to report that police contact, so that was another factor as to why we were conducting a warrantless search." [Id. at 12]. Kemp testified that, in addition to the cocaine, crack cocaine, and drug paraphernalia, "another bag with a bigger amount that Mr. Williams said was baking soda" was also found in Plaintiff's bedroom during the search. [Id. at 18].

Kemp also testified that, after the Plaintiff was Mirandized, he admitted on video to selling small amounts of cocaine and that "there would be soft and hard found in his bedroom." [Id. at 8, 14]. At the time, Plaintiff admitted that he possessed 14 grams of powder cocaine and five to six grams of crack cocaine. [Id. at 15]. Later the same day, in a phone call to his wife's cell phone from the Mecklenburg County Jail (the "Jail"), Plaintiff admitted to possessing six to seven grams of crack cocaine. [Id. at 9, 15]. Kemp

5

testified that, based on Plaintiff's admissions, the Petition alleged that Plaintiff possessed seven (7) grams of crack cocaine and 14 grams of powder cocaine. [Id. at 18-19]. Kemp testified that Plaintiff was charged with trafficking in state court because the Charlotte Mecklenburg Police Officers assisting with the operation charged Plaintiff with trafficking based on the "total amounts of substance that were found," which "included the approximately 55-gram bag of white powder they believed to be cocaine." [Id. at 19]. Kemp testified that the Probation Office did not charge Plaintiff with that additional amount because "[they] didn't know what the substance was" and "[they] relied on Mr. Williams's statements about the crack cocaine and powder cocaine for sure they had found in the residence." [Id. at 19]. The Court concluded that probable cause existed to support the charges in the Petition and ordered that Plaintiff be detained.[1] [Id. at 23, 26].

On July 13, 2023, Plaintiff filed the instant Complaint pursuant, in part, to 42 U.S.C. § 1983 and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). [Doc. 1 at 3]. Plaintiff names

---

[1] On August 21, 2023, after denying Plaintiff's motion to suppress evidence from the allegedly illegal search, District Judge Max Cogburn found that Plaintiff had committed the alleged violations and revoked Plaintiff's supervised release. [CR 8/21/2023 Docket Entry; CR 8/21/2023 Oral Order; see CR Doc. 48]. The Court sentenced Plaintiff to a term of imprisonment of 24 months and a term of supervised release of 24 months on these violations. [CR Doc. 49].

SUSPO Kemp, USPO Stoltenberg, and Mecklenburg County Sheriff Gary McFadden as Defendants in this matter, all in their individual and official capacities. [Id. at 2-3]. Plaintiff asserts two wholly unrelated claims in his Complaint. Plaintiff purports to state claims against Defendants Kemp and Stoltenberg related to and arising from the allegedly illegal search they performed at Plaintiff's residence and against Defendant McFadden related to Jail policy requiring that detainees wear "shower shoes" when outside their cells.

As to Defendants Kemp and Stoltenberg, Plaintiff alleges as follows. On March 31, 2022, Defendants Kemp and Stoltenberg, along with six other USPOs, arrived at Plaintiff's home "ostensibly to conduct an [*sic*] urine analysis." [Id. at 14]. After Defendant Stoltenberg and another officer conducted the urinalysis and a cursory search of the upstairs, they invited the six other officers inside the home "to search every room in the home, including the private bedroom which was used exclusively by [Plaintiff's] brother." [Id. at 15]. "Apparently, the reason for their visit was due to an incident which occurred eight days prior. Plaintiff drove to a friend's home to give her a ride to work. While there, a gun was fired and the police were called. The Plaintiff was not involved or even implicated in the shooting, however, an unknown witness allegedly gave a statement to a police officer

accusing Plaintiff of selling drugs." [Id. at 15 (errors uncorrected)]. As a result of the search, the USPOs found "four plastic bags containing illegal contraband, miscellaneous drug paraphernalia, two handguns (which were legally purchased and registered to Plaintiff's brother[)], and other items." [Id. at 15]. Plaintiff was arrested and charged in state court for possession of drug paraphernalia, cocaine trafficking, possession with intent to distribute marijuana, and maintaining a dwelling for keeping and selling controlled substances. [Id. at 16]. These charges were ultimately dismissed. [Id.].

While the federal Petition seeking a warrant for Petitioner's arrest stated the drug amounts as 14 grams of powder cocaine and seven grams of crack cocaine, "[a]t some point later, the weight of the cocaine was changed to 90.9 grams and 32.2 grams of 'crack' cocaine as reflected in the criminal complaints proffered by [a] Mecklenburg police officer [ ] and a third document presented to the courts stated 58.7 grams of cocaine." [Id. at 17]. "These three different amounts clearly support 'tampering' with evidence and/or falsified documents." [Id.]. That is, Defendants Kemp and/or Stoltenberg forwarded "fabricated information" to prosecutors and Plaintiff "suffered a deprivation of life, liberty, or property as a result." [Id.]. Defendant Kemp "subsequently testified under oath that he did not, in fact, possess [an audio] recording which substantiates [that] he knowingly

submitted a falsified document to the court." [Id.]. Ultimately, the state prosecution terminated in Plaintiff's favor on August 29, 2022, because "no probable cause supported the continued confinement." [Id. at 19].

Plaintiff alleges that Defendants Kemp and Stoltenberg "lacked reasonable suspicion to execute a warrantless search and caused Plaintiff to be detained and arrested absent probable cause in violation of his Fourth Amendment rights." [Id. at 14]. Plaintiff claims that Defendants exceeded their jurisdiction by searching every room in the home, including a private bedroom, without "consent from anyone in the home." [Id. at 14]. Plaintiff claims that Defendants violated his Fourteenth Amendment rights by "depriv[ing] [him] of his right to a fair trial by withholding material exculpatory evidence as to the location where evidence was found [bedroom used exclusively by brother]." [Id. at 20]. Plaintiff also claims that Defendants "and other un-named probation officers agreed to deprive" Plaintiff of his civil rights under the Fourth and Fourteenth Amendments. [Id. at 21].

Plaintiff purports to state claims against Defendants Kemp and Stoltenberg for unlawful search and seizure, deprivation of due process, "falsifying" and "fabricating" evidence, malicious prosecution, "criminal

conspiracy to violate Plaintiff's rights,"[2] and "civil rights conspiracy … in violation of the F.T.C.A., Bivens, 42 U.S.C. § 1983, and N.C. state law." [Id. at 3, 13].

For injuries, Plaintiff alleges that he "was unlawfully detained awaiting state charges until charges were ultimately dismissed" [id. at 27], and, at the time of his Complaint, he was awaiting disposition of his supervised release violations, which have since been adjudicated [see id.]. For relief, Plaintiff seeks monetary relief, including punitive damages. [Id.].

As to Defendant McFadden, Plaintiff alleges the following. Jail policy requires detainees to wear Jail-issued shower shoes anytime detainees are outside their cells. [Doc. 1 at 23]. These shower shoes are cheaply made and have "zero traction" on the soles. The flooring inside the POD is "smooth, slick tile on top of concrete" and "any amount of liquid on this floor surface creates an untenable situation" for those trying to walk in shower shoes. [Id.]. On May 5, 2022, at approximately 10:00 a.m., while detained at the Jail, Plaintiff walked down the stairs from the upper deck and stepped off the stairs onto the tile floor. Unbeknownst to Plaintiff, there were small drops of water or some other liquid on the floor, causing Plaintiff to "lose [*sic*]

_____

[2] The Court notes that there is no civil cause of action for criminal conspiracy and this claim will not be addressed further.

his footing and hitting his head on the concrete floor." [Id. at 22]. Plaintiff was transported to Carolina Medical for treatment where they determined Plaintiff suffered "no significant internal injuries." [Id.]. Other detainees have suffered similar such falls, one as recently as July 4, 2023. [Id. at 24, 28].

Plaintiff purports to state claims against Defendant McFadden in his official capacity under the Eighth and Fourteenth Amendments. [Id. at 12]. Plaintiff alleges that Defendant McFadden "has acted with a deliberate indifference toward a condition that posed a significant risk of serious harm" and "was and is aware of facts from which he could draw an inference that a substantial risk of harm exist[s]." [Id. at 23-24].

Plaintiff also purports to state claims against Defendant McFadden in his official capacity based on his "sole statutory responsibility for care and custody of the inmates at the county jail," [id. at 13 (citing N.C. Gen. Stat. § 162-22)[3]], and "the surety on his official bond for acts of negligence in the performance of official duties" pursuant to N.C. Gen. Stat. § 58-76-5,[4] [id.]. Plaintiff also alleges that Defendant McFadden's negligence resulted in

---

[3] N.C. Gen. Stat. § 162-22 provides that, "[t]he sheriff shall have the care and custody of the jail in his county; and shall be, or appoint, the keeper thereof."

[4] N.C. Gen. Stat. § 58-76-5 provides, in pertinent part, that, "[e]very person injured by the neglect, misconduct, or misbehavior in office of … sheriff … may institute a suit or suits against said officer or any of them and their sureties upon their respective bonds for the due performance of their duties in office in the name of the State."

damages to the Plaintiff.[5]  [Id. at 24].  Plaintiff asks the Court to exercise supplemental jurisdiction over his state law claim "if this court determines [Plaintiff's] claim does not rise to the level of a constitutional violation." [Id. at 25].

For injuries, Plaintiff alleges he suffered "injuries to the back of his head and still suffers headaches he believes [were] caused by said injuries," [Id. at 5; see id. at 26], as well as humiliation by officers commenting on Plaintiff's fall [id. at 5].  For relief on these claims, Plaintiff seeks declaratory and monetary relief, including punitive damages.  [Id. at 5, 26].

## II.  ANALYSIS

As a preliminary matter, Plaintiff's Complaint is subject to dismissal for bringing two unrelated claims against unrelated defendants in a single action.  This is expressly prohibited.  See Fed. R. Civ. P. 18(a), 20(a)(2); George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (noting that "[u]nrelated claims against different defendants belong in different suits," to prevent prisoners from dodging the fee payment or three-strikes provisions in the Prison Litigation Reform Act).  "For example, Plaintiff may not pursue claims

---

[5] It is not clear whether Plaintiff purports to state a separate ordinary negligence claim against Defendant McFadden or claims only that N.C. Gen. Stat. § 162-22 created a duty of care allegedly breached by Defendant McFadden.  The Court will address both such contentions.

of retaliation involving one set of defendants while simultaneously pursuing claims for deliberate indifference to serious medical needs against another set of defendants." Thomas v. Davey, No. 1:16cv925, 2017 WL 2691824, at *2 (E.D. Cal. June 22, 2017). A plaintiff may only bring a claim against multiple defendants when (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences; and (2) there are common questions of law or fact. Fed. R. Civ. P. 20(a)(2). As such, Plaintiff's claims against Defendants Kemp and Stoltenberg may not be litigated in the same action as his claims against Defendant McFadden. Nonetheless, because Plaintiff's claims against both sets of Defendants fail in any event, the Court individually addresses them here.

## A. Defendants Kemp and Stoltenberg

Plaintiff purports to state causes of action against Defendants Kemp and Stoltenberg under the Federal Tort Claims Act (FTCA), 42 U.S.C. § 1983, and Bivens.[6] Plaintiff also asserts that Defendants are liable for "civil

---

[6] Plaintiff also alleges that Defendants' conduct violated North Carolina state law. [Doc. 1 at 13]. It is unclear what state law Plaintiff contends Defendants violated. While the fruits of Defendants' search yielded evidence that resulted in state law charges, Defendants were not involved in that decision or any state prosecution of the Plaintiff. Moreover, any purported claim of malicious prosecution relative to the probation Petition fails because those proceedings did not terminate in Plaintiff's favor. Regardless, the Court declines to address this claim any further.

rights conspiracy," which the Court will construe as a claim under 42 U.S.C. § 1985.  The Court will address these claims in turn.

### 1. FTCA

Without elaboration, Plaintiff contends that Defendants' conduct violated the FTCA.  The FTCA creates an exception to the application of sovereign immunity, which generally shields the United States from lawsuits. The FTCA generally authorizes suits against the United States for damages for personal injuries or property caused by the negligent or wrongful acts or omissions of an employee of the United States while acting within the scope of his office or employment.  <u>See</u> 28 U.S.C. §§ 1346(b), 2671.  As a jurisdictional prerequisite, however, a plaintiff must first submit the claim to the appropriate federal agency within two years of accrual of the cause of action and receive a final denial of the claim by the reviewing agency.  28 U.S.C. §§ 2401(b), 2675.  Even if Plaintiff had named the United States as a Defendant in this matter, which he did not, he has failed to allege or show that he has received final administrative denial of his claim.  Plaintiff's FTCA claim, therefore, plainly fails, and will be dismissed.

### 2. Section 1983

Section 1983 provides relief for alleged constitutional violations committed by persons acting under color of state law.  42 U.S.C. § 1983.

Here, Defendants Kemp and Stoltenberg acted pursuant to federal law. Any claims Plaintiff might have against these Defendants for alleged constitutional violations may be brought under <u>Bivens</u>, if at all. As such, any claim Plaintiff purports to advance under § 1983 fails and will be dismissed.

### 3. Section 1985

To state a claim under § 1985, a plaintiff must allege "concrete facts" showing that defendants entered a conspiracy which deprived the plaintiff of his civil rights. <u>Francis v. Giacomelli</u>, 588 F.3d 186, 196-97 (4th Cir. 2009). Courts reject "section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." <u>Williams</u>, at *5 (quoting <u>Simmons v. Poe</u>, 47 F.3d 1370, 1377 (4th Cir. 1995)). The Fourth Circuit has "rarely, if ever, found that a plaintiff has set forth sufficient facts to establish a section 1985 conspiracy." <u>Simmons</u>, 47 F.3d at 1377. To allege a conspiracy, a party must show that two or more persons acted in concert to commit an unlawful act or to commit a lawful act by unlawful means. <u>See id.</u> at 1376. Further, "a party must show an agreement or meeting of the minds between parties to inflict a wrong or injury upon another that results in damage." <u>Williams</u>, at *5 (citations omitted). A plaintiff must also show harm resulting from the alleged conspiracy. <u>Id.</u> (citations omitted).

Taking Plaintiff's allegations as true and drawing reasonable inferences therefrom in Plaintiff's favor, Plaintiff has failed to allege a conspiracy to deprive his civil rights. Plaintiff alleges only that Defendants "and other un-named probation officers agreed to deprive Plaintiff of his right to be free from unreasonable searches and seizures, malicious prosecution, and deprivation of liberty without due process of law." [Doc. 1 at 21]. This is plainly not enough to state a claim under Section 1985. The Court will dismiss this claim on initial review.

### 4. Bivens

A Bivens action is the judicially-created counterpart to 42 U.S.C. § 1983, and allows an action for money damages to be brought against individuals acting under the color of federal law for injuries caused by their unconstitutional conduct. Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 395-97 (1971). Bivens' core premise is to deter individual officers' unconstitutional acts. See Correctional Servs. Corp. v. Malesko, 534 U.S. 61 (2001). "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Bivens claims are not actionable against the United States, federal agencies,

or public officials acting in their official capacities. See FDIC v. Meyer, 510 U.S. 471, 475, 484-86 (1994); Dao v. Chao, 306 F.3d 170, 184 (4th Cir. 2002) ("[A] Bivens action does not lie against either agencies or officials in their official capacity.") (citing Meyer, 510 U.S. at 484-86).

Plaintiff's Bivens claim fails initial review. Plaintiff's official capacity claims against Defendants Kemp and Stoltenberg fail as a matter of law. Meyer, 510 U.S. at 475, 484-86. As to Plaintiff's individual capacity claims, they are barred by Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the United States Supreme Court held as follows:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any

17

> outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

Id. at 486-87 (footnotes omitted; emphasis added); see Poston v. Shappert, 22 Fed. App'x 301, at *1 (4th Cir. 2007) (applying Heck rationale to bar claims for damages under § 1983 and Bivens). Heck also applies to probation and parole violation proceedings. Anderson v. Patterson, No. 6:16-cv-00761-MGL-JDA, 2016 WL 11410926, at *5 (D.S.C. Sept. 13, 2016) (citation omitted). Plaintiff's claims here derive from an allegedly unlawful search that resulted in Plaintiff being charged with two supervised release violations. On August 21, 2023, the Court denied Plaintiff's motion in his criminal proceeding to suppress evidence of this allegedly unlawful search and found Plaintiff guilty of the supervised release violations. Accordingly, given the nature of Plaintiff's allegations, a judgment in his favor would necessarily imply the invalidity of the conviction or sentence on the supervised release violations in the underlying criminal matter. The Court's record confirms that Plaintiff's conviction and sentence remain undisturbed. See Wiley v. Buncombe County, No. 1:10cv181, 2011 WL 3323152, at *4 (W.D.N.C. Aug. 2, 2011) (noting that court may take judicial notice of matters of public record). Therefore, Plaintiff's Bivens claim is barred by Heck and will be

dismissed.[7]

Moreover, even if Plaintiff could show a constitutional violation redressable under <u>Bivens</u>, which is unlikely, Defendants Kemp and Stoltenberg would likely be protected from liability under qualified immunity under the circumstances here in any event. See <u>Gant v. United States Probation Office</u>, 994 F.Supp. 729, 734-35 (S.D. W.Va. Feb. 13, 1998) (finding that, even if plaintiff had stated a <u>Bivens</u> claim, probation officer defendant who acted reasonably in enforcing a court order was entitled to qualified immunity); <u>Ray v. Picket</u>, 734 F.2d 370 (8th Cir. 1984) (holding probation officers were entitled to qualified immunity for their roles in petitioning for probation revocation).

As such, Plaintiff has failed to state any claim upon which relief may be granted against Defendants Kemp and Stoltenberg and his claims against them fail initial review.

## B. Defendant McFadden

Plaintiff purports to state claims against Defendant McFadden in his official capacity related to injuries Plaintiff suffered when he slipped on water

---

[7] The Court notes that to the extent that Plaintiff seeks to hold Defendants Kemp and Stoltenberg responsible for the decision of state court prosecutors to charge Plaintiff with violations of North Carolina law based on evidence recovered by these Defendants, any such claims fail. The record in Plaintiff's criminal proceeding plainly undermines Plaintiff's frivolous allegations of falsifying and fabricating evidence by these Defendants.

while walking in his shower shoes.[8]  Plaintiff claims that a "known dangerous" Jail policy requiring detainees to wear shower shoes outside their cells is deliberately indifferent "toward a condition that posed a significant risk of serious harm."  Plaintiff also claims that Defendant McFadden was negligent and breached a duty of care he owed to the Plaintiff under N.C. Gen. Stat. § 162-22.

Because the Plaintiff was a pre-trial detainee at the relevant times, his deliberate indifference claims are properly brought under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment.  See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239 (1983). However, the Fourth Circuit has long applied the Eighth Amendment deliberate indifference standard to pretrial detainees' deliberate indifference claims. See Moss v. Harwood, 19 F.4th 614, 624 n.4 (4th Cir. 2021).

"Deliberate indifference is a very high standard – a showing of mere negligence will not meet it."  Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999).  "An officer is deliberately indifferent to a substantial risk of harm to a detainee when that officer 'knows of and disregards' the risk."  Parrish, 372

---

[8] In his Complaint, Plaintiff checked the pre-printed boxes reflecting that he was suing Defendant McFadden in his individual and official capacities.  [See Doc. 1 at 3].  Plaintiff, however, made no allegations in his Complaint against Defendant McFadden supporting individual capacity liability.  [See Doc. 1 at 3, 12, 13].  As such, the Court will dismiss any purported individual capacity claims against Defendant McFadden.

F.3d at 302 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). To be liable under this standard, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Thus, deliberate indifference requires a showing that a defendant "actually knew of and disregarded a substantial risk of serious injury to the detainee…." Young v. City of Mount Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001). "As a general matter, '[o]nly governmental conduct that shocks the conscience is actionable as a violation of the Fourteenth Amendment.'" Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (quoting Young, 238 F.3d at 574 (internal quotation and citation omitted)).

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, Plaintiff has not stated a claim for deliberate indifference against Defendant McFadden in his official capacity based on the shower shoe policy. While requiring detainees to wear shower shoes outside their cells may increase the risk of detainees slipping and falling on slippery surfaces in the Jail, this policy does not rise to the level of deliberate indifference and is nonetheless undoubtedly informed by countervailing safety and security concerns. This claim will be dismissed.

The Court declines to exercise supplemental jurisdiction over Plaintiff's negligence claims, including Plaintiff's claim under N.C. Gen. Stat § 162-22 and against the surety on the Sheriff's official bond, because no federal claim has passed initial review. See Artis v. Dist. Of Columbia, 138 S.Ct. 594, 595 (2018) (when a district court dismisses all claims independently qualifying for the exercise of federal jurisdiction, it "ordinarily dismiss[es] all related state claims."); 28 U.S.C. § 1367(c)(3). Accordingly, these claims are also dismissed.

The Court will dismiss Plaintiff's Complaint against Defendant McFadden without prejudice only to Plaintiff pursuing his negligence claims in state court, if at all. The Court will dismiss Plaintiff's Complaint against Defendants Kemp and Stoltenberg with prejudice because amendment would be futile.

## IV. PLAINTIFF'S MOTIONS

Also pending are Plaintiff's motion for appointment of counsel and motion for leave to amend his Complaint. [Docs. 3, 9]. The Court will deny Plaintiff's motion for counsel as moot. As for Plaintiff's motion to amend, Plaintiff seeks to add Austin B. Kennedy, identified as an Officer with the Charlotte Mecklenburg Police Department, as a Defendant in this matter. [Doc. 9]. Plaintiff contends that Kennedy "presented false or fabricated

documents to the grand jury" in Plaintiff's state criminal proceeding. [Id. at 1]. The Court will deny this motion. Plaintiff failed to include a proposed Amended Complaint with his motion and Plaintiff cannot amend his Complaint piecemeal. Moreover, Plaintiff's Complaint is being dismissed for the reasons stated in this Order. If Plaintiff wishes to proceed against Mr. Kennedy, he may do so in a separate action.

## V. CONCLUSION

For the reasons stated herein, the Court will dismiss this action with prejudice, except for Plaintiff's claims against Defendant McFadden, which are dismissed without prejudice to Plaintiff pursuing such claims in state court.

## ORDER

**IT IS, THEREFORE, ORDERED** that this action [Doc. 1] is **DISMISSED with prejudice** on initial review under 28 U.S.C. §§ 1915A and 1915(e), except for Plaintiff's claims against Defendant McFadden, which is **DISMISSED without prejudice** in accordance with the terms of this Order.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Appointment of Counsel [Doc. 3] and Plaintiff's Motion Requesting Leave to Amend Complaint [Doc. 9] are **DENIED**.

The Clerk is respectfully instructed to terminate this action.

**IT IS SO ORDERED**.

Signed: August 31, 2023

Martin Reidinger
Chief United States District Judge